UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-CV-599-KKC

WILLIAM HENRY CLAY                                                                    PLAINTIFF

v.                          **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA, ET AL.                                   DEFENDANTS

Currently before the Court for consideration are the following pleadings:

(1)     The "Motion to Dismiss" [Record No. 8], filed by the United States of America;[1]

(2)     The "Response" [Record No. 12] filed by William Henry Clay, the *pro se*
plaintiff, to the United States' "Motion to Dismiss";

(3)     The second "Motion to Dismiss" [Record No. 30], filed by the Defendants United
States of America; Jose Barr, Jr.; Lt. Greenfield; Harley Lappin; Kim M. White; the Department of
Justice ("DOJ"); Jane Doe; the Federal Bureau of Prisons ("BOP"); and Alberto Gonzales;[2]
and

(4)     The plaintiff's "Response"[Record No. 31] to the United States' second "Motion
to Dismiss."

FACTUAL BACKGROUND

The plaintiff, William Henry Clay, is an inmate currently confined at the Federal Correctional

---

[1] This motion relates to the plaintiff's original complaint [Record No.1] filed in this proceeding on October 27, 2005.

[2] This motion relates to the plaintiff's *amended* complaint [Record No.17] filed in this proceeding on May 24, 2006.

Institution in Terre Haute, Indiana.  He was previously incarcerated at the Federal Correctional Institution in Manchester, Kentucky ("FCI-Manchester").  He is serving a 262-month sentence with ten years of supervised release for Distribution of Cocaine Base, in violation of 21 U.S.C. 2841.  His current projected release date is April 11, 2014.

<u>Original Complaint [Record No. 1]</u>

In his original complaint , the plaintiff alleged negligence by the Defendant United States of America arising out of an incident at FCI-Manchester on March 21, 2003, in which an FCI-Manchester staff member intentionally assaulted the plaintiff by stabbing him in the chest with a meat thermometer.  Plaintiff alleged that he suffered a wound to his chest and subsequent psychological trauma from the assault.  Plaintiff asserted claims against the United States under the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671 *et seq* (hereinafter "FTCA").

Plaintiff alleges the Defendant United States is liable under the FTCA because it did not meet its statutory duty under 18 U.S.C. §4042 by failing to protect him, a federal inmate, from the intentional assault.  Plaintiff further claims the law enforcement officer exception to the FTCA, which allows the United States to be sued for assault and battery by federal law enforcement officers in certain situations, is applicable to this case.

<u>Amended Complaint [Record No. 17]</u>

On May 24, 2006, Plaintiff filed an Amended Complaint--asserting the violation of various constitutional rights--under the doctrine set forth in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[3]  In the Amended Complaint, Plaintiff named as defendants former

---

[3] To establish a right to relief under *Bivens*, the plaintiff must plead and prove two essential elements.  First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States.  Second, he must demonstrate that the defendants allegedly depriving him of those rights acted under color of federal law.

FCI-Manchester Warden Jose Barron, Jr.; former FCI-Manchester Lieutenant Aaron Greenfield; Regional Director Kim White; Director of the Bureau of Prisons Harley Lappin; United States Attorney General Alberto Gonzales; and a Jane Doe Defendant. He asserted claims against these defendants in their individual and official capacities. He also named as defendants the United States of America, Federal Bureau of Prisons, and the Department of Justice, "in their official capacities."

In his Amended Complaint, Plaintiff alleged that these defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to a known threat to his safety (contact with and exposure to Grundy). He further claimed that the defendants violated their duty, established by 18 U.S.C. §4042, to keep him safe from harm.[4]

The plaintiff alleged that these defendants violated his Fifth Amendment right to due process of law, and to equal protection of the law. Finally, the plaintiff alleges the existence of a civil rights conspiracy under 42 U.S.C. §1986. In his Amended Complaint, the plaintiff seeks monetary damages totaling $2,820,000 from each defendant for compensatory, actual, general, and consequential damages; a jury trial; and any other relief this Court deems appropriate.

<u>March 21, 2003 Incident at FCI-Manchester</u>

On or about March 21, 2003, Plaintiff was incarcerated at FCI-Manchester. Plaintiff states he was involved in a drug ring with a food service staff member, Morris Grundy, a BOP Food Services staff member. Plaintiff states that he then began working in an undercover operation with Lt. Greenfield and a Jane Doe Lieutenant, with the knowledge of and under the direction of Warden

---

*Bivens*, 403 U.S. at 397.

[4] Plaintiff named Defendants White, Lappin, and Gonzales because of their alleged breach of statutory duty to protect him under 18 U.S.C. §4042.

Barr, to investigate the wrongdoings by Grundy.  Plaintiff claims that Grundy had (prior to March

21, 2003) previously assaulted and threatened him about cooperating with the authorities, and that

he made Defendants Greenfield and Doe aware of Grundy's threat.  Plaintiff alleges that despite his

informing Greenfield and Doe about Grundy's threats, they improperly allowed him (plaintiff) to be

placed in the same work area with Grundy.

While Plaintiff was working at his job assignment in Food Services on March 21, 2003,

Morris Grundy intentionally assaulted Plaintiff by stabbing Plaintiff in the chest with a meat

thermometer.  Plaintiff was immediately taken to an outside hospital for treatment and returned to

FCI-Manchester several hours later, where he was placed in the Special Housing Unit.   Later the

same day, Plaintiff was transferred to the Federal Correctional Institution in Ashland, Kentucky

(hereinafter "FCI-Ashland").

Morris Grundy was subsequently terminated from employment by the BOP and criminally

prosecuted for the assault in this Court, in Criminal Action 03-47, *United States of America v. Morris

Grundy*, London Division, (Hon. Danny C. Reeves, presiding).  On July 25, 2003, Grundy pleaded

guilty to one count of "Assault of Another Individual by Striking or Wounding," a violation of 18

U.S.C. §113(a)(4).  [*Id.*]  He was sentenced to two years of probation on October 24, 2003.  [*See* Plea

Agreement, Attachment B to United States Motion to Dismiss, Record No. 8]

<u>United States' First Motion to Dismiss [Record No. 8]</u>

The United States alleges that Morris Grundy acted outside the scope of his  employment

with the BOP when he assaulted the plaintiff on March 21, 2003.[5]  The United States argues that

---

[5]  The pleadings in this case (from both plaintiff and the defendants) state that Grundy assaulted the plaintiff
at FCI-Manchester on March *21*, 2003.  In Grundy's "Plea Agreement," the date of the assault was listed as March
*31*, 2003.  *See* Plea Agreement in Civil Action 03-47, *United States of America v. Morris Grundy*, London Division.

Grundy's subsequent criminal conviction in this Court conclusively establishes that Grundy's actions in striking and wounding the plaintiff were criminal in nature and were obviously not authorized as part of his job assignment in Food Services at the prison.  As a result of Grundy's criminal action, the United States terminated Grundy's employment.  Based on the fact that Grundy's actions fell outside the scope of his employment with the BOP, the United States argues that plaintiff is unable to recover damages under the FTCA.

The United States relies upon *Flechsig v. United States*, 786 F. Supp. 2d 646 (E.D. Ky. 1991), *affirmed*, 991 F.2d 300, 303-04 (6th Cir.1993), for the proposition that the FTCA allows suit by a federal prisoner for personal injury suffered as the result of employee negligence only, not an intentional tort.  The United States next contends that Grundy did not assault the plaintiff in the course of a "search, seizure, or arrest" as contemplated by the case law, and that relevant legislative history of the intentional tort exception does not assist the plaintiff's case.   Therefore, the United States concludes that the exception contained in §2680(h) does not apply to the facts of this case to allow recovery by the plaintiff.

Plaintiff's Response to United States'<br>First "Motion to Dismiss" [Record No. 12]

In his response to the first "Motion to Dismiss," the plaintiff first cited various cases interpreting the cases pertaining to claims challenging prison conditions under the Eighth Amendment.[6]  He then generally responded to the United States motion by reiterating his contention that Grundy was, in fact, acting within the scope of his employment when he (Grundy) assaulted the plaintiff and that, accordingly, the United States was liable for Grundy's actions.  The plaintiff

---

[6] At this juncture of the proceeding (February 10, 2006), the plaintiff had only asserted claims under the FTCA, and had not yet asserted any Eighth Amendment claims under *Bivens*.

argued that because Grundy was in fact a "Correctional Officer" who was vested with arrest powers, the law enforcement exception to the intentional tort exception, set forth in 28 U.S.C. §2680(h), allows him to recover damages from the United States.

<u>United States' Second Motion to Dismiss [Record No. 30]</u>

In its second "Motion to Dismiss," the United States offers several reasons why the Amended Complaint should be dismissed.[7]   First, the United States argues that the plaintiff failed to demonstrate that he administratively exhausted his individual capacity *Bivens* claims against the named defendants in compliance with applicable BOP regulations.  Second, to the extent that the plaintiff asserts claims against the named defendants in their official capacities, and also asserts claims against the named federal agencies, the United States argues that the doctrine of sovereign immunity precludes the award of monetary damages under *Bivens*.

Third, the United States submits that the plaintiff has failed to state a claim, on the merits, against the defendants with respect to his allegations of the denial of due process and equal protection of the law.  The United States advances the same argument with respect to the plaintiff's allegations concerning the alleged civil conspiracy among the defendants.

Fourth, the United States argues that because the plaintiff failed to allege that Defendants White, Lappin and Gonzales had any direct or personal involvement in the complained-of actions which led to the March 21, 2003 assault, they have no liability to the plaintiff for damages.  Citing various cases, the United States argues that to the extent the plaintiff asserts claims against these

---

[7] All of the named defendants are or were federal employees and/or federal agencies.  At the time of the incident at the prison on March 21, 2003, Morris Grundy was employed by the BOP.  For the sake of simplicity, and because all of these defendants (except Grundy) are represented by the United States Attorney's Office, the Court will collectively refer to the named defendants as "the United States."

defendants because of their supervisory status, the doctrine of *respondeat superior* simply does not apply in civil rights claims which fall under the purview of *Bivens*.

Fifth, the United States contends that because Defendants Gonzales, White, Lappin, and Greenfield lack minimum contacts with the State of Kentucky, the plaintiff lacks personal jurisdiction over these defendants. Sixth and finally, the United States cites numerous cases for the proposition that Defendants Gonzales, White, Lappin, Barr, and Greenfield enjoy qualified immunity from suit.

<u>STANDARD OF REVIEW</u>

Although the United States relies on both Fed. R. Civ. P. 12(b)(6) and 56, both parties have submitted substantial evidence outside the scope of the pleadings and, therefore, it is appropriate to analyze the motion under Rule 56. *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). Summary judgment is appropriate "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to

judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a summary judgment motion, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *see also Id.* at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. ").

The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

With these considerations in mind, the Court will address the various arguments presented by the United States and the plaintiff's responses thereto.

8

DISCUSSION
1. FTCA Claims
A. Liability Under the FTCA

Under traditional principles of sovereign immunity, the United States is immune from suit except to the extent the government has waived its immunity. In 1946, Congress adopted the FTCA which, subject to numerous exceptions, waives the sovereign immunity of the federal government and confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government for negligence of its employees. 28 U.S.C. §1346(b)(1). In relevant part, the FTCA authorizes suits against the government to recover damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of this office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. §1346(b)(1).

The FTCA is limited to cases in which "a private individual [would be liable] under like circumstances," 28 U.S.C. §2674, and provides the exclusive remedy for tort actions against the federal government, its agencies and employees. *Ascot Dinner Theatre v. Small Business Admin.*, 887 F.2d 1024, 1028 (10th Cir. 1989). It constitutes a limited waiver of sovereign immunity by the United States. In giving consent to suit in particular circumstances, the FTCA defines the scope of district court jurisdiction to entertain FTCA suits. *See* 28 U.S.C. §1346(b).

District court jurisdiction over civil actions against the government for the acts or omissions of its employees is dependent on whether the particular employee is "acting within the scope of his office or employment." *Id*. Liability under the FTCA is determined by reference to the law of the state where the alleged injury occurred; 28 U.S.C. §1346(b); *Arbour v. Jenkins*, 903 F.2d 416, 422

9

(6th Cir.1990).

## B.  Application of State Law to the Facts

Here, the plaintiff alleges that the United States is liable to him, under the FTCA, for damages stemming from Grundy's assault on him.  The United States denies liability, arguing that although Grundy was employed by the BOP at the time he assaulted the plaintiff, Grundy's criminal actions squarely fell outside the scope of his employment with the BOP.[8]  The United States relies upon the case of *Flechsig v. United States*, 786 F. Supp. 646 (E.D. Ky. 1991), *affirmed*, 991 F.2d 300, 303-04 (6th Cir.1993).

The *Flechsig* case is instructive in assessing whether Grundy's actions fell within the scope of his employment for the BOP.  In *Fleschig*, the plaintiff was assaulted by an escorting correctional officer after she was taken from a federal prison on a medical trip.  *Id*. at 302. The Sixth Circuit stated that whether an employee acted within the scope of his employment is a matter of state law. *Flechsig v. United States*, 991 F.2d at 303-04.

*Flechsig* explained that Kentucky law holds that "as a general rule it is not within the scope of a servant's employment to commit an assault upon a third person and the master is not liable for

---

[8] The United States cites 28 U.S.C. §2680(h), which states in relevant part:

The provisions of this chapter and section 1346(b) of this title shall not apply to--

- - - -

**(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights**: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.  For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law. (Emphasis Added)

such an assault though committed while the servant was about the master's business." (*Flechsig* 991

F.2d at 303-304, citing *Southeastern Greyhound Lines v. Harden's Adm'x*, 281 Ky. 345, 136 S.W.2d

42, 45 (1940)).   *Flechsig* also cited *Fournier v. Churchill Downs-Latonia, Inc.*, 292 Ky. 215, 166

S.W.2d 38 (1942).

In *Fournier*, a race track hired extra guards to control the crowds attending a race. In

determining that the race track was liable for an assault by a guard upon a patron, committed with

the club provided for the guard's duties, the Kentucky Court employed a three-part test.   The

employer is liable for the act of an employee, it stated, if "(1) the act is of the kind the offender is

employed to perform; (2) it occurs substantially within the authorized time and space limits of the

employment; and, (3) the offender is actuated, at least in part, by a purpose to serve [the employer]."

*Id.*, 166 S.W.2d at 40.

Based on these Kentucky cases, the *Flechsig* court held that the prison guard's assault on the

plaintiff fell outside the scope of his employment with the BOP. The court stated as follows:

> The role of a prison and its guards is more similar to the situation in *Fournier*.
> In the present case, taking the facts as plaintiff alleges them, the sexual assault by
> Officer Trent obviously is far from what he was employed to do, his apartment
> clearly is outside the space limit of his employment, and it would be impossible to
> assert that he was actuated in any way by the purpose of serving the Bureau of
> Prisons.  For these reasons, we affirm the holding of the District Court that Officer
> Trent acted outside the scope of his employment and thus plaintiff has no claim under
> the FTCA based on Trent's conduct.

*Flechsig*, 991 F.2d at 303.

In this case, the Court  will adopt the *Flechsig* holding that the FTCA allows suit by a federal

prisoner for personal injury suffered as the result of employee negligence, not an intentional tort.

*Id*. at 303.  There is no argument that Grundy's brutal actions against the plaintiff--by use of a meat

11

thermometer--were in any way required by or incident to his duties as a Food Service employee at FCI-Manchester.  As the Sixth Circuit correctly analyzed  ". . .  it would be impossible to assert that he [Grundy] was actuated in any way by the purpose of serving the Bureau of Prisons."  *Flechsig*, 991 F.2d at 303.  Indeed, Grundy's subsequent "Plea Agreement" clearly demonstrates that his conduct was criminal.

In his February 10, 2006 Response to the United States' first "Motion to Dismiss," the plaintiff states that "Grundy's employment for the Federal Bureau of Prisons which Morris Grundy was work within the scope of his employment, it is agreed that Grundy was terminated from the Federal Bureau of Prisons.  But before he was terminated he was working for the Government *and that makes the United States responsible for Grundy's action of deathly assault*."  [Plaintiff's Response, Record No. 12, p. 5 (Emphasis Added)]

Simply interpreted, the plaintiff argues that because Grundy assaulted him while he (Grundy) was in the employ of the BOP, the United States is liable for Grundy's action.  The plaintiff's reasoning along this line implicates the common law doctrine of *respondeat superior*, under which an employer can be vicariously liable for the actions of an employee.

This common law argument is not available in a claim brought under the FTCA.  As the Court has emphasized, liability under the FTCA imposes different requirements.  A federal employee must be acting within the scope of his employment, as defined by applicable state law, for liability to attach.  Here, even the plaintiff does not contend that stabbing an inmate with a meat thermometer was either a primary or incidental requirement of Grundy's employment   In short, the government has not waived immunity to compensate prisoners for bodily injuries sustained as the result of intentional, criminal assaults committed by federal employees acting outside the scope of their

employment. *Flechsig*, 991 F.2d at 303. Under Kentucky law, the plaintiff has failed to establish that Morris Grundy was acting within the scope of his employment with the BOP.

2.  "Law Enforcement Officer Exception,"
28 U.S.C. §2690(h) Is Not Applicable

Plaintiff next argues that the "law enforcement exception" to the intentional tort exception, set forth in 28 U.S.C. §2680(h), allows him to recover damages under the FTCA. The FTCA specifically exempts the intentional torts of assault and battery from its waiver of sovereign immunity. 28 U.S.C. §2680(h). There is, however, an exception to this exception. Claims of assault and battery against "investigative or law enforcement officers of the United States Government" are covered by the FTCA. *Id*. An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *McLittle v. United States*, 2005 WL 2436714, *4 (W.D. Tenn., Sept. 29, 2005) (Not Reported in F. Supp. 2d).[9]

In construing exceptions to waivers of sovereign immunity, the Supreme Court of the United States has instructed that the federal courts must "identify those circumstances which are within the words and reason of the exception--no less and no more." *Kosak v. United States*, 465 U.S. 848, 854 n.9 (1984). Otherwise, "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the [FTCA]." *Id.*

The United States acknowledges that Grundy met the legal definition of a "law enforcement

---

[9] This Court's original disposition of the *Flechsig* case is instructive on the issue the applicability of the "law enforcement officer" exception in the case at bar. In *Flechsig*, the correctional officer met the definition of "law enforcement officer" under §2680(h). This Court determined, however, that the assault against that plaintiff did not occur in the course of a search, seizure or arrest, as required by statute. *Flechsig*, 786 F. Supp at 648. The Sixth Circuit affirmed this Court's decision in *Flechsig* on other grounds.

13

officer" under §2680(h).  It disputes, however, that Grundy's assault on the plaintiff occurred in the course of Grundy executing a "search, seizure or arrest," which it contends is required by §2680(h). The United States cites *Pooler v. United States*, 787 F.2d 868, 872 (3rd. Cir. 1986) for the proposition that the exception was enacted to provide a remedy against the United States in situations where law enforcement officers conduct "no-knock" raids or otherwise violate the fourth amendment.[10]

Even assuming that the plaintiff's version of the facts (that he was working undercover to discover information about an alleged drug importation scheme, and that Grundy was a target) are true, these facts would still fail to establish liability under the "law enforcement exception" of the FTCA.   The plaintiff did not allege that Grundy assaulted him in the course of a search, seizure or arrest, as is contemplated by the legislative history of the exception.

In fact, the complaint alleges the opposite.  In his original complaint [Record No. 1, ¶¶ 13-

---

[10] *Pooler* discussed the legislative history behind "law enforcement exception" of the FTCA, and concluded the application of the exception was a narrow one.  The court said:

> "No matter how generously we read them, however, the complaints do not charge that Kimmel committed an intentional tort while executing a search, seizing evidence, or making an arrest. We read the 1974 amendment to section 2680(h) as addressing the problem of intentionally tortious conduct occurring in the course of the specified government activities. It is in the course of such activities that government agents come most directly in contact with members of the public. The government places them in such a position, thereby exposing the public to a risk that intentionally tortious conduct may occur.  That Congress intended to deal only with conduct in the course of a search, a seizure, or an arrest is confirmed by the sparse legislative history of the 1974 amendment. **The Senate Report on the amendment states that the proviso was enacted to provide a remedy against the United States in situations where law enforcement officers conduct "no-knock" raids or otherwise violate the fourth amendment**.  *See* S.Rep. No. 588, 93d Cong., 2d Sess. 2-3 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 2789, 2790-91."

*Pooler*, 787 F.2d at 872 (Emphasis Added).

The United States notes that when this Court rendered its opinion in *Flechsig*, 991 F. Supp. 2d at 302-304, it adopted *Pooler*'s rationale.  The Sixth Circuit affirmed *Flechsig* on other grounds.

14

16], the plaintiff alleged that prior to the assault on March 21, 2003, he had reported to Lt. Greenfield that Grundy was transporting marijuana into FCI-Manchester.  Upon receiving this information, Greenfield asked the plaintiff if he would share his information with the Security Investigative Section ("SIS") of FCI-Manchester.  Plaintiff states that he agreed and that he "talked to a woman lieutenant of SIS the next day after Lt. Greenfield's request."  [*Id*., ¶ 14]

Nothing in the described fact pattern indicates that *Grundy* was effectuating a search, seizure or arrest.  The undisputed facts reveal that Grundy's assault on the plaintiff transpired in the Food Service area at FCI-Manchester, where Grundy and the plaintiff were present to perform their food service jobs.  Giving even the most literal interpretation to the exception set forth in the statute, the Court can not agree that Grundy was engaged in any activity which could be construed as a "search, seizure or arrest" as contemplated by the statute.

To apply the "law enforcement officer" exception to the facts of this case would essentially destroy the purpose and intent of the general rule:  that the United States is not liable when a federal employee intentionally commits an assault and battery on someone.  The Court determines that the exception in §2680(h) is reserved for the specific instances where law enforcement officers violate a person's constitutional rights *in the course of a search, seizure or arrest.  See Pooler v. United States*, 787 F.2d at 872 (where complaint failed to allege that the federal agent committed an intentional tort while executing a search, seizing evidence, or making an arrest pursuant to §2680(h), district court properly found that the "law enforcement exception" did not apply).  Accordingly, the Court will not apply the "law enforcement exception" of the FTCA to the facts of this case.

### 3.  Liability under 18 U.S.C. §4042

Next, the plaintiff contends that, independent of state law, 18 U.S.C. §4042 creates a standard

of care that is enforceable under the FTCA.  That statute provides:

> The Bureau of Prisons, under the direction of the Attorney General, shall--
> ....
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise.

18 U.S.C. §4042(a)(2).

In *United States v. Muniz*, 374 U.S. 150, 164- 65 (1963), the Supreme Court held that "the duty of care owed by the Bureau of Prisons by federal prisoners is fixed by 18 U.S.C. §4042, independent of an inconsistent state rule."  While correctional officials are expected to use ordinary care under §4042 to protect prisoners from unreasonable risks, they are not required to provide them with a risk-free environment.  *Fleishour v. United States*, 365 F.2d 126, 128-29 (7th Cir.), *cert. denied*, 385 U.S. 987 (1966); *see also Flechsig  v. United States*, 786 F. Supp 646,649-50, *aff'd on other grounds*, 991 F.2d 300 (6th Cir. 1993) (BOP's duty under §4042 is not absolute; its duty depends on the reasonableness under the circumstances); *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987); *Artis v. Petrovsky*, 638 F. Supp. 51, 53 (W.D.Mo. 1986).

The general rule deduced from cases that have evaluated §4042's effect on FTCA claims is that the government is not an insurer of a prisoner's safety.  *Cowart v. United States*, 617 F.2d 112, 116 (5th Cir.) (quoting *Jones v. United States*, 534 F.2d 53,54 (5th Cir.), *cert. denied*, 429 U.S. 978 (1976)), *cert. denied*, 449 U.S. 903 (1980).[11]  Here, however, the plaintiff alleges facts in both his Complaint and Amended Complaint which *might* indicate that the BOP did not observe the general

---

[11] In discussing the scope of §4042, one district court has stated that although the BOP has a general duty to exercise ordinary diligence to keep inmates safe from harm, "that duty does not encompass the notion that every injury, of any degree that befalls a federal prisoner is compensable under the FTCA."  *Beckwith v. Hart*, 263 F. Supp.2d 1018, 1022-23 (D. Md. 2003).

rule of its duty of care under §4042.[12]  The United States did not provide a specific response to the following factual allegations contained in the Amended Complaint.

Plaintiff alleges that he began buying marijuana from Grundy for a while, buying as much as $1,200.00 at a time.  [Amended Complaint., ¶¶ 27-29]  He then alleged that after he decided he wanted out of their drug transactions, he discussed the situation with Defendants Greenfield and FBI and "SIS" agent Jane Doe.  Plaintiff alleges that both defendants told him to continue  on and "not to worry that they *guaranteed* that plaintiff would be safe."  [*Id.*, ¶ 29]

He alleges that Doe gave him a phone number where he could reach the SIS anytime.  [*Id.*, ¶ 30]  He further alleges that he also told Greenfield and Doe that he was worried that Grundy was "on to" him [Plaintiff], and that  "I was being threatened by Grundy."  [*Id.*]  Plaintiff alleges that the although the threats continued, SIS agent Jane Doe told him to keep on working and "don't worry." [*Id.*]  Plaintiff then alleges that after Grundy made a specific threat to kill him, and after he verbally conveyed that threat to SIS agent Jane Doe and Greenfield, Greenfield told him that he would "take care of Grundy."  [*Id.*, ¶¶ 31-32]

This alleged fact pattern is therefore different from the one in *Flechsig*, because here, the plaintiff alleges that federal defendants actively sought his involvement in an undercover drug operation, the target of which was another federal employee.  In *Flechsig*, the offending employee was clearly acting to further his own motives; there was no allegation that the BOP had any prior knowledge suggesting that he would assault the plaintiff; and the offending employee committed his assault against the plaintiff away from the BOP premises.

---

[12] The allegations in ¶¶ 27-32 of the Amended Complaint were far more specific than those contained in ¶¶ 13-16 of the original Complaint.

17

In its second "Motion to Dismiss," the United States did not address these very specific allegations which portray the plaintiff as acting in the capacity of an inmate-undercover agent. These allegations suggest BOP employees Greenfield and former Warden Barr, and FBI agent Jane Doe, may have been specifically made aware of a potential threat to the plaintiff's physical safety; may have ignored the plaintiff's information of impending harm; and may have failed to protect the plaintiff from Grundy's harm even under an ordinary care standard. Therefore, the plaintiff's FTCA claims for breach of duty under §4042 will proceed forward for more development as to whether there were any mandatory procedures governing the safety of an inmate allegedly being used undercover to target a BOP employee for criminal activity.[13]

### 4. Official Capacity *Bivens* Claims

In his Amended Complaint, the plaintiff asserted his various constitutional claims under *Bivens* against the named individual defendants in their *official* capacities. Such claims fail to state a claim upon which relief can be granted. A *Bivens* claim is only properly asserted against individual federal employees in their individual capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "[A] *Bivens* claim [for damages] may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (citing *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984); *Sanchez-Mariani v. Ellingwood*, 691 F.2d 592 (1st Cir. 1982); *see also Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Butz v. Economou*, 438 U.S. 478, 512-14 (1978)).

---

[13] The record lacks sufficient information to determine if the holding of in *Montez v. United States*, 359 F.3d 392 (6th Cir. 2004) applies to the specific facts of this case. In *Montez*, the Sixth Circuit held that under the facts of that particular case, §4042 imposed a mandatory duty on the BOP, but determined that the duty was of a general nature. In *Montez*, the court held that BOP officials were given no guidance and had discretion in deciding how to accomplish the statute's objectives. *Montez*, 359 F.3d at 396.

When damages are sought against federal employees in their *official* capacities, the damages

in essence are sought against the United States.  However, such claims cannot be maintained.  *Myers*

*& Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United*

*States*, 521 F.2d 872, 847-75 (9th Cir. 1975).  When a federal employee is sued in his or her

individual capacity, the action is not a suit against the United States.  *Gilbert v. DaGrossa*, 756 F.2d

1455, 1458 (9th Cir. 1985).  Accordingly, the *official* capacity claims which the plaintiff has asserted

against Defendants Barron, Greenfield, White, Lappin, Gonzales, and Jane Doe Defendant, must be

dismissed with prejudice.

### 5.   Individual Capacity *Bivens* Claims

Plaintiff alleges that Defendants Lieutenant Aaron Greenfield, former Warden Barr,  BOP

Regional Director Kim White, BOP Director Harley Lappin, United States Attorney General Alberto

Gonzales, and a Jane Doe Defendant, in their *individual* capacities, violated his rights under the

Eighth Amendment by demonstrating deliberate indifference to his welfare.  He alleges that these

defendants intentionally violated his right to due process; violated the BOP's statutory duty for his

safekeeping, and violated his right to equal protection of the law.  The plaintiff seeks millions of

dollars in damages in relation to these claims.

The individual capacity claims against Greenfield, White, Lappin, Gonzales, and Jane Doe

Defendant must be dismissed.  As the defendants correctly note in their second "Motion to Dismiss"

[Record No. 30], the plaintiff has offered no documentary evidence to the Court that he has

exhausted his *Bivens* constitutional claims.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal

prisoners bringing actions concerning prison conditions (this includes any other incident to prison

life, such as excessive force) to exhaust all available administrative remedies before suing in federal court.  The United States Supreme Court ruled in 2002 that exhaustion of administrative remedies is required for *all* prisoner suits.  *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983 (2002) 534 U.S. at 524 (emphasis added); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement).

In order to meet the exhaustion requirement of the PLRA, a prisoner must either attach a copy of his prison grievance forms to the complaint or state the nature of the remedies pursued and the result of each process.[14]  *See Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir.2000).  For any issue the plaintiff intends to raise, he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law.  *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999).  Unless the record demonstrates that the requirements of §1997e(a) have been met, a district court is required to dismiss an action without prejudice.  *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 119 S. Ct. 88 (1998).  The burden is on the plaintiff to demonstrate exhaustion of his administrative remedies *prior* to filing the lawsuit.  *Id.*

---

[14] The administrative exhaustion process for federal inmates is set forth in 28 C.F.R. §§542.10-16 .  Section 542.13(a) demands that an inmate first informally present his complaint to the staff (BP-8 form) before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint with staff, then he may submit to the warden a formal written complaint (BP-9) within fifteen (15) calendar days of the date on which the basis of the complaint occurred.  §542.13(b).

An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  When the inmate demonstrates a valid reason for delay, these time limits may be extended.  28 C.F.R. §542.15.

Here, Plaintiff Clay did not file anything which would indicate that he pursued the BP-9, BP-10 and BP-11 administrative steps.  While Clay reiterates in his most recent filing of September 5, 2006 [Record No. 31] that administratively he exhausted his *FTCA claim*, he was *also* required to have complied with the BOP's three-step process in order to assert additional damages claims under *Bivens* against the individually named defendants.  His compliance with the FTCA exhaustion requirement does not suffice as a substitute for compliance with 28 C.F.R. §542.10-16.  In *Porter v. Nussle*, the Supreme Court specifically stated that:

> Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  *See* [*Booth v. Churner*,] 532 U.S. 731, 41, 121 S. Ct. 1819.   And unlike the previous provision, which encompassed only §1983 suits, exhaustion is now required for all "action[s]...brought with respect to prison conditions," whether under §1983 or "any other federal law."...*Thus, federal prisoners suing under Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.2d 619 (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a §1983 suit.*

*Porter v. Nussle*, 534 U.S. at 524 (emphasis added); *see also Garfield v. Federal Prison Industries*, 3 Fed. Appx. 292, 2001 WL 921137 (6th Cir. (Ohio) January 26, 2001) (Not recommended for full-text publication) (Pursuant to 42 U.S.C. §1997e(a), a prisoner must exhaust all of his available administrative remedies, even in money damage cases, before filing a civil rights action in federal court; the §1997e exhaustion requirement applies to *Bivens* actions brought by federal prisoners, even if they seek both equitable and monetary relief).

The fact that the plaintiff fully exhausted his FTCA claim did not relieve him of his duty to fully exhaust his *Bivens* claims.  Here, the plaintiff did not undertake the exhaustion process. In the absence of exhaustion, the plaintiff's individual capacity claims against Defendants Barr, Greenfield, White, Lappin, Gonzales, and Jane Doe must be dismissed.

21

6.  Alternative Grounds for Dismissal
 of Fifth and Eighth Amendment Claims 
Against Defendants Lappin, Gonzales and White

The plaintiff alleges that these defendants are liable to him for the decisions at FCI-Manchester relating to Grundy's employment in the Food Service area, and Grundy's alleged participation in illegal activities.  He alleges that all of these defendants, in their supervisory capacities, had an obligation to ensure that the subordinate officials at FCI-Manchester acted in a manner which did not endanger his life, physical well being, or his rights under the Fifth and Eighth Amendments.

Lappin is the Director of the BOP, which is a division of the Department of Justice.  White is the Regional Director of the BOP's Mid-Atlantic Office.  Gonzales is the United States Attorney General, the highest-ranking office in the DOJ.  None of these defendants were employed at FMC-Lexington at the time of any of the complained-of events.  None of these defendants are alleged to have had any direct or personal involvement with the decisions about which the plaintiff complains (failure to safe-keep under 18 U.S.C. §4042, Eighth Amendment violations, and violations of Fifth Amendment equal protection and due process rights).

Construed broadly, the plaintiff's claims against Lappin, Gonzales, and White fall under the doctrine of *respondeat superior*.  However, the doctrine of *respondeat superior* cannot provide the basis for liability under *Bivens.  See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691-95, (1978); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995) (per curiam); *Jones v. City of Memphis*, 586 F.2d 622, 624- 25 (6th Cir.1978).

*Bivens* requires a showing that the named defendant performed the acts that resulted in the deprivation of a constitutional right.   *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S.Ct. 598

22

(1976); *Bivens*, 403 U.S. at 390 n.2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998). Liability under *Bivens* is personal and is based upon each defendant's own constitutional violations. *Trulock v. French*, 275 F.3d 391, 402 (4th Cir. 2001).

Lappin's position as Director of the BOP is not sufficient to impose liability against him in his individual capacity. The same applies to White and Gonzales in their respective positions. The plaintiff must allege that Lappin, Gonzales, and White personally condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct. *See Copeland v. Machulis*, 57 F.3d at 481.

Here, the plaintiff alleges in his Amended Complaint that prior to Grundy's assault on him on March 21, 2003, he only informed two named defendants that he was having difficulties with Grundy, and that Grundy was involved in the illegal transportation of drugs into FCI-Manchester. Those two defendants are Lt. Greenfield and Jane Doe, agent of "SIS" and the "FBI." He claims that these defendants informed Warden Barr of his activities. The plaintiff makes no allegation that he personally advised, involved, or informed Defendants White, Lappin, or Gonzales about his fears of personal safety at the hands of Grundy. In the absence of such knowledge or acquiescence, the claims against Lappin, White and Gonzales in their individual capacities fail and must be dismissed as frivolous.

### 7. Statute of Limitations

The plaintiff's *Bivens* claims against the various individually named defendants in the Amended Complaint (Greenfield, Doe, Lappin, Gonzales, White, and Grundy) suffer from another fatal deficiency which the Court is unable to ignore. These claims are time-barred.

On October 24, 2003, Grundy was convicted in this Court of Assault of Another Individual

23

by Striking or Wounding, in violation of 18. U.S.C. §113(a)(4).  At the latest, the plaintiff's time to assert a claim for damages against the individually named defendants began to run on October 24, 2003.   In addition to his apparent failure to exhaust his claims through the BOP administrative process, the plaintiff did not assert his *Bivens* claims against these defendants until May 24, 2006, over two-and-a-half years later.

Constitutional claims asserted under *Bivens* claims have a one-year statute of limitations under Kentucky law.  *See Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *McSurely v. Hutchison*, 823 F.2d 1002 (6th Cir.1987).  Kentucky's one-year statute of limitations set forth in K. R. S. §413.140(1)(a) applies to civil rights claims arising in Kentucky.  *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990). These claims are time-barred and must be dismissed.

### 8.  *Bivens* Claims Against United States and Federal Agencies

To the extent that the plaintiff seeks monetary damages from the United States and two federal agencies, the BOP and the DOJ, that claim also fails.  Federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity." *United States v. Testan*, 424 U.S. 392 (1976); *see also Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304 (1989); *Kentucky v. Graham*, 473 U.S. at 166.  The United States has not waived its sovereign immunity to monetary damages for constitutional torts.

Similarly, a lawsuit against an agency of the United States is, in essence, a suit against the United States.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The VA is a federal agency.

24

"Federal agencies may not be sued *eo nomine* except as authorized by Congress in 'explicit language.'" *Castleberry v. Alcohol, Tobacco & Firearms Div.*, 530 F.2d, 673 n.3 (5th Cir. 1976) (citing *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S. Ct. 410, 411 (1952)); *Brooks v. Graber*, 2000 WL 1679420 (D. Kan. November 6, 2000) (no authorization existed to name the Department of Justice because it cannot be sued *eo nomine* as a defendant; moreover, plaintiff's claims were barred by sovereign immunity and/or failure to state a claim of relief). The plaintiff's claims against these federal agencies must be dismissed with prejudice.

### 9. Conspiracy Claims

The Court agrees that the plaintiff's civil rights conspiracy claims, brought under 42 U.S.C. §1986, fail to state a cause of action on their face. Claims under §1986 are normally asserted in civil rights action against state officials pursuant to 42 U.S.C. §1983. In order to properly plead a state claim under this civil rights conspiracy provision, the conspiracy claim must allege the following: two or more persons conspired to deprive a person of the equal protection of the law; an action in furtherance of the conspiracy; resulting injury; and the conspiracy was motivated by racial or other class-based discrimination. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994), *cert. denied*, 514 U.S. 1066 (1995); *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005).

The plaintiff did not properly plead a conspiracy, conspiratorial actions between the named defendants to subject plaintiff to the assault, or harm any of his civil rights. As the United States correctly notes, the plaintiff's action is brought against federal, not state officials. The plaintiff's civil rights conspiracy claims will be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

<u>CONCLUSION</u>

The Court agrees with the United States' first, second, and fourth legal arguments, and the part of its third argument pertaining to the conspiracy claims under 42 U.S.C. §1986. Those arguments dispose of the entirety of the plaintiff's claims. Discussion of the remainder of the United States legal arguments is unnecessary. Accordingly, it is **ORDERED** as follows:

(1)     The first "Motion to Dismiss," filed by the United States of America [Record No. 8] is **DENIED**.

(2)     The plaintiff's FTCA claims under 18 U.S.C. §4042 will proceed forward.

(3)     The second "Motion to Dismiss," filed by the Defendants United States of America; Jose Barr, Jr; Lt. Greenfield; Harley Lappin; Kim M. White; the Department of Justice ("DOJ"); Jane Doe; the Federal Bureau of Prisons ("BOP"); and Alberto Gonzales, [Record No. 30] is **GRANTED.**

(4)     All of the plaintiff's *Bivens* claims (official and individual capacity) and civil conspiracy claims under 42 U.S.C. §1986 asserted in the Amended Complaint are **DISMISSED WITH PREJUDICE**.

(5)     A Partial Summary Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants named in the Amended Complaint.

Dated this 21st day of September, 2006.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

26